# LEVIN-EPSTEIN & ASSOCIATES, P.C.
---
60 East 42nd Street • Suite 4700 • New York, New York 10165
T: 212.792.0046 • E: Joshua@levinepstein.com

April 22, 2022

*Via ECF*
The Honorable Paul E. Davison, U.S.M.J.
U.S. District Court, Southern District of New York
300 Quarropas St.
White Plains, NY 10601-4150

        Re:    *Hernandez v. Yonkers Brewing Company LLC et al*
                  <u>Case No.: 7:21-cv-06951-KMK-PED</u>

Dear Honorable Magistrate Judge Davison:

      This law firm represents Plaintiffs Flor Hernandez and Edgar Donato Sanchez (together, the "Plaintiffs") in the above-referenced action. This letter is submitted pursuant to *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015), seeking approval of the enclosed Settlement Agreement, which provides for a total settlement amount of $25,000.00 and the dismissal of Plaintiffs' claims with Prejudice.

      A copy of the executed Settlement Agreement is attached hereto as "**Exhibit A**."

      A Stipulation of Dismissal With Prejudice is being filed simultaneously with this letter motion, and the parties respectfully request that the court So-Order the Stipulation.

### I.    Procedural History.

      This is an action under the Fair Labor Standards Act ("FLSA") and the New York State Labor Law ("NYLL") brought by two (2) individuals against their former employer and others, for violations of federal and state wage-and-hour laws. Defendants, Yonkers Brewing Company LLC (the "Corporate Defendant"), John Rubbo, Nicholas Califano, and Mike Pecs (collectively, the "Defendants") allegedly operated a restaurant located at 92 Main Street, Yonkers, NY 10701 ("Yonkers Brewing Company").[1] With the exception of Nicholas Califano, who has not appeared in this action, all Defendants were represented by Murtha Cullina LLP.

      According to the operative amended complaint filed on August 23, 2021 [Dckt. No. 14] (the "Amended Complaint", or the "*Am. Compl.*"), Plaintiffs worked at the business as follows:

| **Plaintiff** | **Start** | **End** | **Hours per Week** | **Regular Rate of Pay** |
|---|---|---|---|---|
| | 4/1/2021 | 6/30/2021 | 40.0 | $14.00 |

---

[1] Defendant Nicholas Califano has not appeared in the Action, and is not otherwise represented by counsel. Upon Court approval of the parties' Settlement Agreement, the claims against all defendants will be dismissed with prejudice, pursuant to, Fed.R.Civ.P. 41(a)(1)(A)(ii).

| Flor Hernandez | 7/1/2021 | 7/18/2021 | 32.0 | $14.00 |
| --- | --- | --- | --- | --- |
| | 7/19/2021 | 7/31/2021 | 24.0 | $14.00 |
| | 8/1/2021 | 8/7/2021 | 18.0 | $14.00 |
| | 8/8/2021 | 8/14/2021 | 18.0 | $14.00 |
| Edgar Donato Sanchez | 5/1/2020 | 12/31/2020 | 12.0 | $15.00 |
| | 1/1/2021 | 8/7/2021 | 59.5 | $15.00 |
| | 8/8/2021 | 8/14/2021 | 59.5 | $15.00 |

*See Am. Compl.* at ¶¶ 45-54, 56-64.

Plaintiffs alleged that Defendants maintained engaged in time shaving with respect to their working hours. As a result, Plaintiffs asserted that they were entitled to unpaid and/or overtime wages for such time under the FLSA and NYLL. Defendants answered the Amended Complaint and denied Plaintiffs' allegations. Defendants have asserted arguments in support of their contention that Plaintiffs were paid for all "hours worked," and in response to other material allegations of the Amended Complaint. Defendants further asserted that the records of payment and time records undermined the Plaintiffs' factual contentions and allegations.

Plaintiffs further allege that during the relevant time period, Defendants failed to provide Plaintiffs with a proper written notice of their wage rate, which was never less than the minimum wage, pursuant to the NYLL. Plaintiffs also allege that they were not provided with accurate wage statements upon each payment of wages. Defendants also dispute that wage rate notices were not provided to Plaintiffs.

Between February 2, 2022 and March 11, 2022, the Corporate Defendant produced dozens of pages of payroll records, time records, underlying metadata, and electronically-stored-information, and other documents concerning Plaintiffs' employment. If such production is credited, Plaintiffs would be entitled to significantly less compensation than alleged.

On or around March 15, 2022, after multiple rounds of negotiations, the parties reached a resolution in principle to settle this matter for a total sum of $25,000 (the "Settlement Amount") to be paid out in accordance with the terms of the accompanying Settlement Agreement.

The settlement is objectively fair, reasonable, and the product of arm's length negotiations between experienced counsel. For these reasons and those set forth in further detail below, the settlement should be approved.

### II. The Settlement Agreement is Fair and Reasonable.

To determine whether an FLSA Settlement Agreement should be approved as fair and reasonable, courts in the Second Circuit consider the totality of the circumstances, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted).

"Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects reasonable compromise over contested issues, the court should approve the settlement." *Martinez v. Hilton Hotels Corp.*, 2013 WL 4427917, at *2 (S.D.N.Y. 2013) (citation omitted).

### A. The Settlement Sum is Substantial and Fair Given the Plaintiffs' Range of Recovery.

The first factor articulated in *Wolinsky* examines "the Plaintiff's range of possible recovery." *Wolinsky,* 900 F.Supp.2d 332, at 335.

The Settlement Agreement satisfies this prong because Plaintiffs' proposed ultimate recovery represents approximately 46.83% of Plaintiffs' estimated maximum recovery for unpaid wages, liquidated damages, wage notice violations, wage statement violations and pre-judgment interest. See *Chowdhury v. Brioni America, Inc.*, 2017 WL 5953171 at *2 (S.D.N.Y. 2017) (net settlement of 40% of FLSA Plaintiff's maximum recovery is reasonable); *Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486 at *2 (S.D.N.Y. 2017) (net settlement of 29.1% of FLSA Plaintiff's maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. 2015) (approving a settlement constituting 25% of the maximum possible recovery).

The method and formula for the derivation of the Plaintiffs' reasonable range of recovery assumes the following, after considering Defendants' documentation of hours worked and compensation received:

(i)   Plaintiffs would have a low likelihood of recovery for the allegations of unpaid wages given that Defendants produced time and payroll records for that period.

(ii)  Plaintiffs were paid time-and-a-half for all hours worked over 40.

(iii) Plaintiffs were paid at least the prevailing minimum wage in-effect, throughout the statutory period.

3

Taking these assumptions into account, the undersigned computed that the alleged unpaid wages yielded the aggregate amount of $15,840. The undersigned yielded this amount by subtracting Plaintiffs' assumed lawful wages, by Plaintiffs' paid wages. Defendants sharply dispute that Plaintiffs are owed any unpaid wages.

The Settlement Agreement requires that Defendants pay a settlement sum in the amount of $25,000.00 to resolve the case, payable lump sum payments allocated to unpaid wages (subject to W-2 treatment, as required by law), liquidated damages (subject to 1099 treatment), and attorneys' fees and costs. After such attorneys' fees and costs, Plaintiffs will receive payments totaling $16,148.11, in the aggregate.

Plaintiffs believe that the Settlement Amount is a fair compromise to resolve this case without further litigation, and without subjecting both parties to the time and expense of additional discovery.

The number of hours Plaintiffs worked was a seriously contested issue that made the settlement of the claims asserted in this action difficult. The parties engaged in discovery to address various issues related to liability and damages. In the course of discovery, Defendants provided the dated time and payroll records that were maintained during Plaintiffs' employment. These records potentially compromised Plaintiffs' claims given that those records were created by "punch-in" and "punch-out" entries generated by Plaintiffs. Defendants' production of employment records if credited, appear to contradict Plaintiffs' claims.

The undersigned law firm conducted an analysis based on the applicable maximum statutes of limitation under the FLSA while taking into consideration the information gleaned from Defendants' production of records. Through the course of the discovery process, the key issue that evolved concerned whether or not Plaintiffs were paid for all hours worked, including spread-of-hours pay.

The net proceeds of the Settlement Agreement compensates Plaintiffs for all of the hours business records show that Plaintiffs worked, and do not take into account Defendants' sharp dispute concerning whether all such hours were spent working. In addition, the net proceeds provide for liquidated damages, and a compromised amount for claimed wage notice violations.

Given the risks these issues presented, the Settlement Amount is reasonable.

### B. The Settlement Agreement Avoids the Incurrence of Additional Expenses.

The second *Wolinsky* factor examines "the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses." *Wolinsky,* 900 F.Supp.2d 332, at 335. This factor also weighs in favor of *Cheeks* approval.

The Settlement Agreement resolves bona fide disputes over sharply contested issues, namely the total number of hours worked by Plaintiffs. In that regard, Defendants assert that Plaintiffs worked substantially fewer hours than they allege. During the discovery phase of this case, Defendants produced time reports and paystubs. If the trier of fact determined that the

computer generated time reports and paystubs were accurate, then Plaintiffs worked fewer hours than alleged, resulting in a diminished recovery. In fact, there is the possibility they would not be owed any wages. Proceeding to trial would consume significant amounts of time and resources, and Plaintiffs face the hurdles of rebutting Defendants' time records for certain periods of time. *See Garcia v. Jambox, Inc.,* 2015 WL 2359502, at *3 (S.D.N.Y. 2015) (Plaintiff's burden on the rebuttable presumption is high where Defendants have produced records).

The continued litigation of this case would necessitate no less than four (4) depositions, and a trial. The associated costs and the continued prosecution of this case would necessitate the incurrence of substantial attorneys' fees and costs on both sides. Accordingly, it is in the interests of both parties to effectuate a settlement.

### C. The Seriousness of the Litigation Risk Faced by Plaintiffs is High.

The third *Wolinsky* factor examines "the seriousness of the litigation risks faced by the parties." *Id at 335.* This factor also weighs heavily in favor of settlement.

Both parties face serious litigation risks as to both liability and damages, *to wit*: prevailing on the amount of hours allegedly worked, and the amount of alleged unpaid wages owed.

Defendants furnished time records and payroll records from 2020 through 2021. Plaintiffs, in order to succeed on the merits for this period, would have to rebut the presumption that Defendants paid Plaintiffs in accordance with NYLL and/or the FLSA. Where, as here, Plaintiffs have produced no documentation of their hours worked or compensation received for this period, and Defendants have produced records, Plaintiffs' burden on this rebuttable presumption is high. *Gyalpo v. Holbrook Dev. Corp.*, 577 B.R. 629 (E.D.N.Y. 2017); *Garcia v. Jambox, Inc., supra* (S.D.N.Y. 2015).

Accordingly, the seriousness of the litigation risks on the part of both parties' continued prosecution of the case weighs in favor of settlement.

### D. The Settlement Agreement is a Fair Compromise Accomplished Between Experienced Counsel Following Court-Ordered Mediation.

The fourth *Wolinsky* factors examines "whether the settlement agreement is the product of arm's-length bargaining between experienced counsel" as well as the "possibility of fraud or collusion." *Wolinsky,* 900 F.Supp.2d 332, at 335. This factor weighs heavily in favor of *Cheeks* approval.

The contested issues, and arms-length negotiation by counsel demonstrate there was no fraud or collusion. *See Meigel v. Flowers of the World, NYC, Inc*., 2012 WL 70324, at *1 (S.D.N.Y. Jan. 9, 2012) ([T]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement). *Abrar v. 7-Eleven, Inc*., 2016 WL 1465360, at *2 (E.D.N.Y. 2016). Additionally, Plaintiffs are satisfied with the settlement amount and voluntarily and willingly entered into the agreement.

Levin-Epstein & Associates, P.C. has obtained favorable decisions in wage-and-hour cases

that have set precedent in this area of law. *See Singh v. Lintech Elec., Inc.,* 2021 WL 1062533, at *3 (E.D.N.Y. 2021) (securing dismissal of fraudulent conveyance actions, and cancellation of *lis pendens*, filed in FLSA action); *Suarez et al v. Brasserie Felix, Inc. et al*, Case No. 19-cv-07210, Dckt. No. 59 (hired by Plaintiffs' counsel to facilitate resolution in bankruptcy proceedings and secured $800,000 settlement on behalf of twelve (12) FLSA plaintiffs); *El Aalaoui v. Lucky Star Gourmet Deli Inc.,* 2021 WL 22787, at *1 (S.D.N.Y. 2021) (successfully vacating default judgment entered against FLSA defendants in the amount of $231,660); *Rivera v. Crabby Shack, LLC,* 2019 WL 8631861, at *5 (E.D.N.Y. 2019) (successfully arguing motion to enforce and approve settlement agreement on behalf of defendants)*; Pugh v. Meric*, 2019 WL 2568581, at *2 (S.D.N.Y. 2019) (post-bench trial order issued by the Hon. Judge Denise Cote, holding that the "wage notice penalty" in NYLL § 198(1)(1-b), by its very terms, does not mandate the imposition of damages); *Pugh v. Meric*, 2019 WL 3936748, at *5 (S.D.N.Y. 2019) (post-bench trial order reducing plaintiff's attorneys' fees award of $8,000 to $800); *Reyes v. The Picnic Basket, Inc.,* Case No. 18-cv-140, Dckt. No. 39, at *3-4 (S.D.N.Y. 2018) (successfully opposing Plaintiff's motion for conditional certification).

Moreover, the Settlement Agreement protects Plaintiffs from the risk of default by requiring Defendants to execute a Settlement Agreement providing for recovery of attorneys' fees in the event of default. *See* Ex. A.

### III.     The Allocation for Attorneys' Fees and Costs is Reasonable.

As Plaintiffs' counsel, the undersigned agreed to be paid a 1/3 contingency fee, agreed to by Plaintiffs in their Retainer Agreement, which is reduced to writing and is signed by Plaintiffs, a copy of which is attached as "**Exhibit B**".

Disbursements we have paid are limited to service of process ($377.05) and a filing fee ($402.00), for a total of $799.05 in costs. The undersigned deducted that amount from the Settlement Amount, and divided the difference by three, with one-third for legal fees and two thirds to Plaintiffs. Proof of disbursements are included in "**Exhibit C**". A true and correct copy of Plaintiffs' counsel's contemporaneous time and billing records, documenting each attorneys' hourly rate, hours expended, and tasks worked on, is annexed hereto as **Exhibit "D"**.

The contingency fee in this case should be approved because it is the fee Plaintiffs agreed upon in their retainer agreement. *In re Lawrence*, 24 N.Y.3d 320, 339 (2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written.").

Moreover, the one-third contingency is the fee which courts in this District consider to be presumptively fair in FLSA cases. *See, e.g., Castillo v. Cranes Express Inc*., 2018 WL 7681356, at *5 (E.D.N.Y. 2018) (same); *Vidal v. Eager Corp*., 2018 WL 1320659, at *2 (E.D.N.Y. 2018); *Ezpino v. CDL Underground Specialists, Inc*., 2017 WL 3037483, at *3 (E.D.N.Y. 2017); *Hdir v. Salon de Quartier*, 2017 WL 8950426, at *2 (E.D.N.Y. 2017) ("Courts in this district using the percentage method have found a fee award of one third of the settlement amount to be reasonable".) (*citing Romero v. Westbury Jeep Chrysler Dodge, Inc*., 2016 WL 1369389, at *2 [E.D.N.Y. 2016]); *Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 WL 6621081 at *3 (E.D.N.Y.

2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277 at *2 (E.D.N.Y. 2013) (approving attorney's fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by courts in this Circuit").

Based on this, the requested fee of one-third of Plaintiffs' recovery should be found reasonable and permitted. The parties respectfully request that the Court approve the settlement as fair and reasonable and So Order the proposed Stipulation to Dismiss the case.

**IV.     The Agreement Satisfies All Other Factors Considered for Approval.**

The terms of the Settlement Agreement are consistent with *Cheeks*. For example, the release in the Agreement is limited to wage-and-hour claims and there are no confidentiality or non-disparagement provisions, although there is a narrow "no publication" clause that prohibits Plaintiffs from contacting the media or posting about the settlement on social media. Plaintiffs and the undersigned believe that this is a reasonable, limited restriction necessary to implement the settlement. See, e.g., Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, No. 13–CV–5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (holding that nondisclosure clause prohibiting contact with media or social media "is fair and . . . does not run afoul of the FLSA's remedial purposes").  The settlement was reached following arm's-length negotiations between counsel well-versed in wage-and-hour law and following extensive discovery.

In sum, the settlement is fair and reasonable, providing Plaintiffs with a substantial recovery protected against the uncertainties and costs of trial, and should be approved by the Court.

We thank the Court for its time and consideration of this matter.

                              Respectfully submitted,

                              LEVIN-EPSTEIN & ASSOCIATES, P.C.

                              By:  */s/ Jason Mizrahi*
                                   Jason Mizrahi, Esq.
                                   60 East 42nd Street, Suite 4700
                                   New York, NY 10165
                                   Tel. No.:  (212) 792-0048
                                   Email: Jason@levinepstein.com
                                   *Attorneys for Plaintiffs*